# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

WILLIAM LILL, as permanent
administrator of the Estate of
Robert Lill, Deceased,

    Plaintiff,

    vs.

NATHAN DEAL, Governor of the
State of Georgia, THE STATE OF
GEORGIA, and SHERIFF STEVE
JESSUP,

    Defendants.

CV 212-175

## ORDER

Presently before the Court are Defendants' motions to dismiss, as supplemented by additional briefing by the parties. Dkt. Nos. 6; 8; 20; 21; 22. Upon due consideration, the Court revises a portion of its prior Order. Dkt. No. 17. Despite this amendment, Defendants Nathan Deal and the State of Georgia's Motion to Dismiss Complaint, Dkt. No. 6, and Defendant Sheriff Steve Jessup's Motion to Dismiss Plaintiff's Complaint, Dkt. No. 8, are **GRANTED**.

AO 72A
(Rev. 8/82)

# I. Factual Background

In the present suit, Plaintiff William Lill, Administrator of the Estate of Robert Lill (the "Deceased"), seeks declaratory relief, injunctive relief, and damages against the State of Georgia, Governor Nathan Deal, and the Sheriff of McIntosh County, Steve Jessup. See Dkt. No. 1.

The Complaint alleges that on July 11, 2009, "McIntosh County deputy sheriffs working under the direction of Sheriff Steven Jessup came to the residence of [the Deceased]." Id. ¶ 8. The deputy sheriffs arrested and hand-cuffed the Deceased and transported him to the McIntosh County Detention Center. Id. ¶ 9. After the Deceased was incarcerated, "[t]he McIntosh County Sheriff's Department conducted a search of the residence" and seized various items of personal property. Id. ¶¶ 10-11.[1]

"On or about July 24, 2009, the McIntosh Sheriff's Office reported to the District Attorney for the Atlantic Judicial Circuit the seizure of property from the residence of [the Deceased] . . . ." Id. ¶ 12. Later, on September 20, 2009, "the Prosecuting Attorneys' Council of Georgia, acting on behalf of the District Attorneys office of the Atlantic Judicial Circuit, sent a certified letter addressed to [the Deceased's

---

[1] Paragraph 10 of the Complaint alleges that the Deceased was not present during the search and seizure. Dkt. No. 1 ¶ 10. However, the Report of Seizure to the District Attorney, which Plaintiff attached to the Complaint, states that the Deceased was present during the seizure. See id. at Ex. 1. In considering the present motions, the Court will accept the factual allegation in Paragraph 10 of the Complaint as true.

home], which included" a Notice of Seizure of Personal

Property." Id. ¶ 13.

The Complaint alleges that this Notice was sent pursuant to

O.C.G.A. § 16-13-49(n), which is the code provision concerning

forfeitures. That code section states:

> If the estimated value of personal property
> seized is $25,000.00 or less, the district
> attorney may elect to proceed under the
> provisions of this subsection in the following
> manner:
> (1) Notice of the seizure of such property
> shall be posted in a prominent location in the
> courthouse of the county in which the property
> was seized. Such notice shall include a
> description of the property, the date and place
> of seizure, the conduct giving rise to
> forfeiture, a statement that the owner of such
> property has 30 days within which a claim must be
> filed, and the violation of law alleged;
> (2) A copy of the notice, which shall include a
> statement that the owner of such property has 30
> days within which a claim must be filed, shall be
> served upon an owner, interest holder, or person
> in possession of the property at the time of
> seizure as provided in subsection (i) of this
> Code section and shall be published for at least
> three successive weeks in a newspaper of general
> circulation in the county where the seizure was
> made . . . .

O.C.G.A. § 16-13-49(n). Plaintiff contends that the Notice

given in this case was statutorily deficient because the Notice

did not contain an adequate description of "the violation of law

alleged." In addition to sending the Notice to the Deceased's

residence, notice was published in The Darien News, the legal

organ of McIntosh County. Dkt. No. 1 ¶¶ 21, 38. The Complaint

AO 72A
(Rev. 8/82)

alleges that "the Prosecuting Attorneys of the State of Georgia advised the McIntosh County Sheriff's Department" to publish a notice of seizure at the McIntosh County Courthouse; however, the Complaint does not specify whether a notice was actually posted at the courthouse. Id. ¶ 19. Plaintiff also contends the notice provided by the State through these various methods was a violation of due process because, due to the Deceased's circumstances, he never received actual notice.

The Deceased was unable to receive the Notice sent to his residence because he was incarcerated at the McIntosh County Detention Center at the time and therefore did not have access to the residence. Id. ¶ 17. While the Notice was purportedly delivered to Joy Bridges[2] at the residence, Bridges could not communicate with the Deceased because, as a part of the terms and conditions of Bridges's bond, Bridges was forbidden from having contact with inmates at the McIntosh County Jail. Id. ¶ 18. Plaintiff alleges that, when the Notice was mailed to the Deceased's residence, Sheriff Jessup "had actual knowledge that the [Deceased] was incarcerated in the McIntosh County Detention Center, which is in the same building in which [the Sheriff] maintains his official offices." Id. ¶ 20.

---

[2] The relationship between the Deceased and Joy Bridges is unclear from the Complaint. They appear to have shared the same residence and to have been arrested at the same time.

AO 72A
(Rev. 8/82)

Additionally, the Complaint alleges that the Deceased was incapable of receiving the notice by publication because, pursuant to a policy of the McIntosh County Sheriff, The Darien News is not permitted in the Deceased's cell block. Id. ¶ 21.

On November 3, 2009, the State of Georgia filed a civil forfeiture action in the Superior Court of McIntosh County. Id. ¶¶ 22-23. In that action, "the State of Georgia alleged that it had initiated administrative forfeiture proceedings to the subject property, and that more than thirty days had elapsed since the second publication of notice of seizures, and further alleg[ed] that no claim had been filed by any owner or interest holder in the defendant property." Id. ¶ 23. In this forfeiture proceeding, the superior court issued an Order of Disposition that provided that the property seized from the Deceased was forfeited to the State of Georgia and issued an Order of Distribution, which distributed the seized property to the McIntosh County Sheriff's Office. Id. at Ex. 7. The property subject to the Order of Disposition included various firearms and ammunition. Id. at Ex. 1.

The Complaint alleges that "until [the Deceased] was released from custody many months later [the Deceased] was never provided with actual notice that the State of Georgia was seeking to have his property forfeited to the state, nor was

AO 72A
(Rev. 8/82)

[the Deceased] given actual notice of the seizure of his property." Id. ¶ 26.

## II. Procedural Background

In October 2012, Plaintiff William Lill, as Administrator of Robert Lill's Estate, filed suit against Governor Nathan Deal, the State of Georgia, and Sheriff Steve Jessup. Dkt. No. 1. The Complaint asserted three claims: denial of due process under the Fifth and Fourteenth Amendments, conversion, and declaratory or injunctive relief. Id. ¶¶ 34-44. By January 2013, all defendants had moved to dismiss the Complaint. Dkt. Nos. 6; 8.

On August 30, 2013, Defendants' motions to dismiss were granted in part and stayed in part. Dkt. No. 17. All claims were dismissed except for the due process claim brought under 42 U.S.C. § 1983, which seeks to force, through an injunction, Governor Deal and Sheriff Jessup to return seized property. Id. at 7. The filings had failed to address potentially important issues encompassed in the claim, namely:

> (1) the application of various types of immunities to a claim for injunctive relief, (2) the appropriateness of a federal district court ordering state actors to return property seized pursuant to a state court's Order of Distribution, and (3) which defendant in which capacity would be the appropriate party to direct such an order, if warranted.

AO 72A
(Rev. 8/82)

Id. at 20-21; see also id. at 21-22 (suggesting the parties address Robinson v. Hanrahan, 409 U.S. 38, 39-40 (1972)). Thus, the Court afforded the parties the opportunity to advance and clarify their positions. Id. at 21. In turn, all parties have filed supplemental briefs. Dkt. Nos. 18; 20; 21; 22.

### III. Legal Standard

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must construe the plaintiff's complaint in the light most favorable to the plaintiff and accept all well-pleaded facts alleged in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

AO 72A
(Rev. 8/82)

## IV. Discussion

### A. Plaintiff's Request for Reconsideration

Before addressing the due process and conversion claims, the Court first notes issues raised by Plaintiff. In effect, Plaintiff is asking for reconsideration of the August 30, 2013 Order. Dkt. Nos. 18; 20.

#### 1. Legal Standard for Motion for Reconsideration

A motion for reconsideration of a non-final order is reviewed under Rule 54(b) for abuse of discretion. Maldonado v. Snead, 168 F. App'x 373, 386-87 (11th Cir. 2006). "Reconsideration is appropriate only if [the moving party] demonstrates: (1) an intervening change of law; (2) the availability of new evidence; [or] (3) the need to correct a clear error of law or prevent manifest injustice." Whitesell Corp. v. Electrolux Home Prods., Inc., No. CV 103-050, 2010 WL 4025943, at *7 (S.D. Ga. Oct. 13, 2010). "In considering a motion for reconsideration, a court must balance the need for finality and judicial economy against the need to render just decisions." Id. Motions for reconsideration "should not be used to relitigate issues which have already been found lacking." Id. "The reconsideration of a previous order is an extraordinary remedy and must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Travis v. Sec'y, DOC, No. 2:13-CV-359-Ftm-

AO 72A
(Rev. 8/82)

29UAM, 2013 WL 5596395, at *1 (M.D. Fla. Oct. 11, 2013) (internal quotation marks omitted).

### 2. Application

Plaintiff raises no meritorious arguments for the Court to reconsider its prior ruling. For example, Plaintiff argues that anyone who has property in McIntosh County should have standing to attack the constitutionality of O.C.G.A. § 16-13-49 because property might be seized without notice. Dkt. No. 20, at 1-2. As noted in the prior Order, "the possibility of future injury [on this basis] is even more remote and speculative than in [City of Los Angeles v. Lyons, 461 U.S. 95 (1983)]." Dkt. No. 17, at 15. Thus, this first point fails.

Plaintiff also argues that he may be entitled to punitive damages because Defendants retained the property at issue without legal authority. Dkt. No. 18; 20, at 4 (citing Sires v. Luke, 544 F. Supp. 1155, 1157, 1165-66 (S.D. Ga. 1982) (dealing with the possibility of punitive damages for a conversion claim litigated between private individuals)). However, for reasons stated in the Court's prior Order, damages—let alone punitive damages—are not appropriate against the defendants. Dkt. No. 17, at 7-13. All of Plaintiff's other arguments likewise fail to illuminate any effective reason for reconsideration.

AO 72A
(Rev. 8/82)

B. Defendants' Motions and Supplemental Arguments

In their supplemental briefings, all defendants argue that Plaintiff cannot make out a due process violation and that Robinson v. Hanrahan, 409 U.S. 38, 39-40 (1972), is inapposite because Plaintiff failed to pursue post-deprivation remedies through state processes.[3]  Dkt. Nos. 21, at 4-6; 22, at 6.

"A § 1983 action alleging a procedural due process clause violation requires proof of three elements: [1] a deprivation of a constitutionally-protected liberty or property interest; [2] state action; and [3] constitutionally inadequate process."  Doe v. Fla. Bar, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)).  As to the third element, it is recognized that "[d]ue process is a flexible concept that varies with the particular situation."  Cryder, 24 F.3d at 177.  Determining whether due process is satisfied requires consideration of three distinct factors:

> First, the private interest that will be affected
> by the official action; second, the risk of an
> erroneous deprivation of such interest through
> the procedures used, and the probable value, if
> any, of additional or substitute procedural
> safeguards; and finally, the government's

---

[3] As Defendants argue, resolving the issues raised by the Court's prior Order is unnecessary to deciding the merits of their motions. Dkt. Nos. 21, at 9-11 (noting that Robinson is inapposite because the Robinson plaintiff exhausted post-deprivation remedies and challenged their adequacy, while Lill pursued none); 22, at 6 (same); 21, at 8 (declining to argue for dismissal based on immunity); 21, at 8 (labeling moot the issue of whether it is proper for a federal court to order a state official to return property, given that there is no actionable violation); 21, at 9-10 (labeling moot the issue of what person would be charged with returning the property if there was an actionable violation).

> interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 178 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

Critical to the remaining claim's viability is whether Plaintiff had an adequate remedy at law to protect his property interests. Significantly, it is recognized that even if a party has continued to wrongfully retain a person's personal property, "no procedural due process violation has occurred if a meaningful postdeprivation remedy for the loss is available." Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009) (quoting Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991)). "[T]he state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." Hudson v. Palmer, 468 U.S. 517, 533 (1984). There are two potential post-deprivation remedies in Georgia.

### 1. Civil Action for Conversion Under O.C.G.A. § 51-10-1

#### a. Conversion as a Remedy

The first potential remedy is through an action for conversion of personal property, which "is a sufficient postdeprivation remedy when it extends to unauthorized seizures of personal property by state officers." Case, 555 F.3d at 1331. In Georgia, this claim arises under O.C.G.A. § 51-10-1.

AO 72A
(Rev. 8/82)

Lindsey, 936 F.2d at 561.  This statute provides that "[t]he owner of personalty is entitled to its possession," and "[a]ny deprivation of such possession is a tort for which an action lies."  O.C.G.A. § 51-10-1.  The Eleventh Circuit has noted that:

> [t]his statutory provision covers the unauthorized seizure of personal property by police officers.  Therefore, the state has provided an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law.

Lindsey, 936 F.2d at 561 (quoting Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987) (per curiam)); see also Allen v. Peal, No. CV 312-007, 2012 WL 2872638, at *2-3 (S.D. Ga. June 18, 2012) (dismissing a due process claim for lost or seized personal property because O.C.G.A. § 51-10-1 provides an adequate post-deprivation remedy); Pacesetter Apparel, Inc. v. Cobb Cnty., 374 F. App'x 910, 912 (11th Cir. 2010) (per curiam) (same); Mayo v. Fields, No. 1:10-CV-1607-TWT, 2010 WL 2723066, at *4 (N.D. Ga. July 8, 2010) (same); United States v. LeCroy, Nos. 2:02-CR-38-RWS-SSC & 2:08-CV-2277-RWS, 2012 WL 1114238, at *66-67 (N.D. Ga. Mar. 30, 2012) (same).  Indeed, a successful claim under this statute allows a plaintiff to elect among remedies, including recovery of the property.  See Md. Cas. Ins. Co. v. Welchel, 257 Ga. 259, 262(1) (1987) (citing O.C.G.A. § 44-12-151) ("It is true that in an action for trover and

conversion, the defendant may elect to receive a verdict for return of the property, payment for the value of the property, or money damages.").

### b. Plaintiff's Arguments

Plaintiff denies that O.C.G.A. § 51-10-1 was available as an adequate remedy because (A) O.C.G.A. § 16-13-49(x)(4)[4] "eliminates any adequate state remedy" and (B) he is now barred from bringing a claim under O.C.G.A. § 51-10-1. Dkt. No. 10, at 6. His first argument fails because it is contradicted by widespread recognition of O.C.G.A. § 51-10-1 as providing a viable post-deprivation proceeding after a forfeiture action. See, e.g., Lindsey, 936 F.2d at 561 ("Because plaintiff . . . has had access to an adequate postdeprivation remedy, no procedural due process violation has occurred, whether or not defendant . . . ever initiated forfeiture proceedings on the automobile."); Gomez-Garcia v. Gwinnett Cnty. Police Dep't, No 1:13-CV-599-TWT-LTW, 2013 WL 1969880, at *2 (N.D. Ga. Apr. 2, 2013) (applying the statute to dismiss a claim for the return of

---

[4] This subsection says:

> No person claiming an interest in property subject to forfeiture under this article may commence or maintain any action against the state concerning the validity of the alleged interest other than as provided in this Code section. Except as specifically authorized by this Code section, no person claiming an interest in such property may file any counterclaim or cross-claim to any action brought pursuant to this Code section.

O.C.G.A. § 16-13-49(x)(4).

AO 72A
(Rev. 8/82)

forfeited property); <u>Fisher v. Bushway</u>, No. 5:07-cv-49(CAR),
2007 WL 1106133, at *3 (M.D. Ga. Apr. 11, 2007) (same); <u>Boyd v.
Dooly Cnty. Sheriff</u>, No. 5:07-cv-319(HL), 2007 WL 2422129, at *1
(M.D. Ga. Aug. 22, 2007) (same); <u>Thompson v. Brogden</u>, No. 7:06-
CV-91(HL), 2006 WL 2793160, at *3 (M.D. Ga. Sept. 26, 2006)
(same).

Addressing Plaintiff's second argument—that he is now
barred from bringing a conversion action—is more difficult to
resolve.[5] Indeed, in the prior Order, the Court found that
Plaintiff's conversion claim,[6] whether for injunctive relief or
damages, was barred because of his own failure to provide <u>ante
litem</u> notice. Dkt. No. 17, at 23-24. As to injunctive relief
for conversion, the Order said:

> As an initial matter, the Court notes that it is
> unclear whether O.C.G.A. § 36-11-1 requires an
> <u>ante-litem</u> notice for injunctive relief on state
> claims. <u>See Toma v. Columbia Cnty., Ga.</u>, No. CV
> 106-145, 2007 WL 1221317 (S.D. Ga. 2007).
> However, Plaintiff failed to suggest that
> O.C.G.A. § 36-11-1 is inapplicable to all or part

---

[5] As an aside, the Court notes that there is no property right to a particular
form of remedy, in a constitutional sense; only the Fourteenth Amendment's
guarantee of a substantial right to redress by <u>some</u> effective procedure.
<u>Estate of McCall ex rel. McCall v. United States</u>, 642 F.3d 944, 951 (11th
Cir. 2011) (quoting <u>Gibbes v. Zimmerman</u>, 290 U.S. 326, 332 (1933)).
Therefore, generally, a claimant's failure to use state remedies does not
trump the availability of those remedies. <u>See Cotton v. Jackson</u>, 216 F.3d
1328, 1331 (11th Cir. 2000) (per curiam) ("If adequate state remedies were
available but the plaintiff failed to take advantage of them, the plaintiff
cannot rely on that failure to claim that the state deprived him of
procedural due process.").
[6] As pleaded in Plaintiff's Complaint, the claim for conversion did not cite
legal authority—that is, it did not identify O.C.G.A. § 51-10-1, despite it
being the appropriate statutory basis for the claim. Dkt. No. 1 ¶¶ 40-41.
The conversion claim seeks "the return of [Plaintiff's] property" and "an
award of damages to compensate" for the time of deprivation. <u>Id.</u>

AO 72A
(Rev. 8/82)

of his state law conversion claim against Sheriff
Jessup in his official capacity.  The statute
itself states that a notice is required for "all
claims against counties" and the Court is unaware
of caselaw limiting the application of O.C.G.A.
§ 36-11-1 to damages claims.  O.C.G.A. § 36-11-1
(emphasis added).  Without any argument by
Plaintiff that an ante-litem notice was
unnecessary, the Court concludes that, unless a
notice was presented within twelve-months of the
accrual of his claim, the state law conversion
claim against Sheriff Jessup in his official
capacity is barred.

Dkt. No. 17, at 23-24.  After careful consideration, the Court

now amends that conclusion and holds that ante litem notice was

not required.

The ante litem statute for claims against counties says,

"All claims against counties must be presented within 12 months

after they accrue . . . or [they] are barred."  O.C.G.A. § 36-

11-1.[7]  The statute's language is broad and does not clearly

delineate between claims for damages and equitable relief.  In

contrast, the ante litem statute for claims against the State is

clear and applies only to a tort "claim," as defined in that

article of the Georgia Code.  O.C.G.A. § 50-21-26.  "'Claim'

means any demand against the State of Georgia for money only on

account of loss caused by the tort of any state officer or

employee committed while acting within the scope of his or her

---

[7] This provision also applies in a suit against an individual acting in his
official capacity for the county.  See Columbia Cnty. v. Branton, 304 Ga.
App. 149, 153 n.2 (2010) ("In the instant case, however, [the sheriff] was
sued only in his official capacity.  That is tantamount to a suit against the
county.  Thus, the claims against [the sheriff] are not sustainable without
the ante litem notice." (citation omitted)).

AO 72A
(Rev. 8/82)

official duties or employment." O.C.G.A. § 50-21-22(1)

(emphasis added). Thus, for claims not seeking money damages

against the State, the notice requirement is inapplicable.

Premo v. Ga. Ports Auth., 227 Ga. App. 27, 28(2b) (1997).

The ante litem provision for counties has no similar

definition. In light of no specific definition to the contrary,

a literal reading of the statute suggests that it would apply to

"[a]ll claims," regardless of whether they lie in law or equity.

Indeed, in one of the earliest applications of the county ante

litem notice statute, the Supreme Court of Georgia noted that

the statute "makes no distinction between the different classes

of claims, but says all," thereby countenancing a broad-

encompassing, literal interpretation. Maddox v. Cnty. of

Randolph, 65 Ga. 216, 218(2) (1880). However, that case was one

for damages. Id. at 216.

A sea change occurred in Lynch v. Harris County, 188 Ga.

651, 654-55(2) (1939). There, the Supreme Court of Georgia

narrowed its construction of the statute. The plaintiff was

seeking to eject the county from certain real property. Lynch,

188 Ga. at 651-62. After analyzing various causes of action

excepted from the ante litem statute,[8] the court held "that

---

[8] The Supreme Court of Georgia has held on other occasions that the ante litem
statute does not apply where the right to and amount of a claim is fixed by
law rather than arise from breach of contract or a duty. See Sammons v.
Glascock Cnty., 161 Ga. 893, 893(3) (1926) (holding that the notice provision
did not apply to a claim based on allowances for a county commissioner

relief [cannot] be denied plaintiffs on the ground that they do not allege that they presented their 'claim' within the date fixed by the statute."[9]  Id. at 654-55(2).  In effect, the court created a "general exception to the claim-presentation requirement, an exception for the control of controversies viewable at least as actions for trying the title to property."[10] R. Perry Sentell, Jr., Claims Against Counties: The Difference a Year Makes, 36 Mercer L. Rev. 1, 38 (1984).  Therefore, Plaintiff's failure to provide ante litem notice does not operate as a bar to bringing an equitable action for conversion.

### c. Sovereign Immunity as a Bar

As a second defense to the conversion claim, Sheriff Jessup argues that the claim is barred by sovereign immunity.  Dkt. Nos. 8-1, at 19-20; 21, at 5.  Plausibly, if an individual is barred from bringing a conversion suit based on sovereign immunity, there may be legitimate concerns about whether there is adequate due process.  But see Pacesetter Apparel, Inc., 374

because salary is provided by law and has no reference to contract or breach of duty, the areas intended to be covered by the county ante litem statute); Terrell Cnty. v. Albany/Dougherty Hosp. Auth., 256 Ga. 627, 629(9) (1987) (stating that O.C.G.A. § 36-11-1 applies to claims arising from contract, but not claims where the "right to and amount of the claim is fixed by law").
[9] The Supreme Court of Georgia also analyzed other jurisdictions' caselaw, including a New York case that "ruled that a similar statute had no application to a suit on the equity side of the court." Lynch, 188 Ga. at 654(2) (citing Sammons v. City of Gloversville, 67 N.E. 622 (N.Y. 1903)).
[10] The Court has discovered only one case applying Lynch's holding.  Cloud v. DeKalb Cnty., 70 Ga. App. 777, 780-81 (1944).  There, the Georgia Court of Appeals equated the plaintiff's claim to an action for trover, which would involve "personal property capable of identification." Id. at 781(3).  As a result, the claim to determine title over the property was not subject to the ante litem statute.  Id.

F. App'x at 912 (stating that "[i]mmunity enjoyed by a state actor or county does not render a state postdeprivation remedy inadequate"). However, as discussed _infra_ Part IV.B.2., an alternative post-deprivation remedy exists, which renders those concerns moot here. Beyond that issue, as it relates to Plaintiff's procedural-due-process claim, this subsection discusses the applicability of sovereign immunity and holds that Plaintiff cannot maintain an action for conversion against Sheriff Jessup in his official capacity.

Pursuant to Georgia's constitution, "sovereign immunity extends to the state and all of its departments and agencies." Ga. Const. of 1990 art. 1, § 2, ¶ IX(e). This immunity extends to counties.[11] Butler v. Dawson Cnty., 238 Ga. App. 808, 809 (1999). "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Id. (quoting Ga. Const. of 1983 art. 1, § 2, ¶ IX(e)); see also O.C.G.A. § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute."). "A waiver of sovereign immunity must be established by the party seeking to benefit

---

[11] The Court notes that for purposes of Plaintiff's conversion claim, Sheriff Jessup in his official capacity is a county official "entitled to assert the county's defense of sovereign immunity." Muckle v. Robinson, No. 2:12-CV-0061-RWS, 2013 WL 251113, at *5 (N.D. Ga. Jan. 23, 2013). This is true notwithstanding the Court's determination that he is an "arm of the state" for purposes of Plaintiff's § 1983 claim. Id.; Dkt. No. 17, at 8-12.

from the waiver." Smith v. Chatham Cnty., 264 Ga. App. 566, 567(1) (2003).

Pursuant to the Georgia Tort Claims Act ("GTCA"), the General Assembly has enacted a limited waiver of immunity for tort claims:

> The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article.

O.C.G.A. § 50-21-23(a). By its plain terms, the waiver applies to tort claims against the "[s]tate," which means "the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, but does not include counties, municipalities, . . . and other local authorities." O.C.G.A. § 50-21-22(5). Thus, "the waiver of sovereign immunity afforded by [the GTCA] does not extend to a county." Woodard v. Laurens Cnty., 265 Ga. 404, 405(1) (1995); DeKalb Cnty. Sch. Dist. v. Gold, 318 Ga. App. 633, 641 n.51 (2012). Instead, as to counties, waiver has been limited, such as for claims involving "inverse condemnation for nuisance," Fielder v. Rice Constr. Co., Inc., 239 Ga. App. 362, 368(2) (1999), or damages arising from the use of any motor vehicle for which "counties [have used their] discretion to

purchase liability insurance," Cameron v. Lang, 274 Ga. 122, 126 (2001) (citing O.C.G.A. § 33-24-51). Indeed, although there is caselaw finding waiver of sovereign immunity to allow a plaintiff to bring a conversion claim, those suits were brought against entities covered by the GTCA. See, e.g., Romano v. Ga. Dep't of Corr., 303 Ga. App. 347, 349-50 (2010) (finding waiver of sovereign immunity in a conversion suit against the Georgia Department of Corrections); Grant v. Newsome, 201 Ga. App. 710, 711-12(1) (1991) (finding waiver for a conversion claim against two prison wardens and the Deputy Commissioner of the Georgia Department of Corrections).

Plaintiff has proffered no statutory basis for finding that sovereign immunity is waived for this claim. See Dkt. Nos. 10; 20; Smith, 264 Ga. App. at 567(1) (placing the burden on the party arguing for waiver); Ga. Dep't of Natural Res. v. Ctr. for a Sustainable Coast, Inc., 294 Ga. 593, 603(2) (2014) (holding that sovereign immunity bars a suit against the state when the claim for injunctive relief is brought pursuant to common law and no waiver of immunity is applicable). Instead, to overcome sovereign immunity, Plaintiff merely lambasts Georgia's notice requirements as unconstitutional. Dkt. No. 10, at 2-5. Therefore, in light of the amended portion of the prior Order regarding ante litem notice, sovereign immunity serves as an

alternative basis to render Plaintiff's conversion claim against Sheriff Jessup in his official capacity as **DISMISSED**.

2. Motion to Set Aside Under O.C.G.A. § 9-11-60(d)(2)

Beyond an action for conversion, an adequate post-deprivation remedy exists under O.C.G.A § 9-11-60(d)(2). This subsection provides that "[a] motion to set aside may be brought to set aside a judgment based upon . . . [f]raud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant." O.C.G.A § 9-11-60(d)(2). Federal and state caselaw recognizes this statute as providing an adequate post-deprivation remedy for forfeiture actions. Boyd, 2007 WL 2422129, at *1; Youree v. State, 220 Ga. App. 453, 453 (1996). Except for certain circumstances not applicable here, "all motions to set aside judgments shall be brought within three years from entry of the judgment complained of." O.C.G.A. § 9-11-60(f). Here, Plaintiff filed suit in federal court before the lapse of the three-year period after the forfeiture action. Simply put, he failed to pursue an available, meaningful post-deprivation remedy. Therefore, Plaintiff's procedural due process claim for the return of personal property is **DISMISSED**.

## V. Conclusion

For the aforementioned reasons, Defendants Nathan Deal and the State of Georgia's Motion to Dismiss Complaint is **GRANTED**.

AO 72A
(Rev. 8/82)

Dkt. Nos. 6; 22. Defendant Sheriff Steve Jessup's Motion to Dismiss Plaintiff's Complaint is **GRANTED**. Dkt. Nos. 8; 21. The Clerk of Court shall close the case.

     **SO ORDERED**, this 23RD day of July, 2014.

                         LISA GODBEY WOOD, CHIEF JUDGE
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)